FAX 331-9267

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ROBERT CARLOW**<br>**LONNIE ST. JEAN**<br>**Plaintiffs** | } | |
| **v.** | } | **C.A. NO. 02-538ML** |
| **STANLEY J. MRUK**<br>**Individually and in his official capacity as Chief of the Anthony Fire District; and, THE ANTHONY FIRE DISTRICT**<br>**Defendants** | } | |

**PLAINTIFFS' MOTION TO ADJUDGE DEFENDANT MRUK IN CONTEMPT**

Plaintiffs move to enforce the consent judgment originally approved by this Court on March 17, 2004 and then entered as a final judgment of the Court on April 28, 2005, and to adjudge defendant Mruk in contempt, as set forth below:

Plaintiffs allege that:

1. Subsequent to the settlement of the merits in this case and the consent judgment, approved by the parties prior to its entry by the Court on March 17, 2004, Defendant Mruk has failed to follow the specific injunction that no further reliance be made by defendant on the portions of the Fire District Constitution and By-Laws mentioned in paragraph 1 of the consent judgment. Paragraph 1 of the Consent Judgment states:

> Declaratory judgment enters for plaintiffs and Article VI of the Constitution and By-Laws of the Anthony Fire Department ("Rules and Regulations") is declared void and of no further effect as violative of plaintiffs' First Amendment rights. Defendants are enjoined from further reliance on or enforcement of Article VI. This same declaratory and injunctive relief also applies to a portion of Article IV, Section 1, from which shall be deleted the terms "respectfully" and "avoid all personalities." Article IV, Section 1, is otherwise not affected by this Consent Judgment.

No terms have been deleted. No new provisions have been promulgated, and no memo or new instructions have been issued to the Fire District's employees regarding the changes required by paragraph 1 of the Consent Judgment.

2. Even if defendants took the position that lack of "final judgment" somehow postponed all obligations under the Consent Judgment, that rationale evaporated on April 28, 2005, when final judgment entered, pursuant to the Consent Judgment.
3. On October 7, 2004, counsel for plaintiffs wrote to counsel for defendants, stating a concern that no revised by-laws or constitutional language had been implemented. Documentation of any such revisions was requested.
4. When no response was received to the October 7, 2004 letter, another letter was sent on October 31, 2004. To this day, no documentation has ever been received, and no changes have been implemented, to the best of the knowledge of plaintiffs and their counsel.
5. In the summer of 2005 defendant Mruk through his negotiating representatives, introduced the pre-judgment constitution and by-laws as exhibits in a labor arbitration proceeding before Arbitrator Mark Grossman. They were accepted as

Joint Exhibits 4 and 5. Andrew J. Baynes, Staff Representative for Local 3240 and Vice President at Large of the R.I. State Association of Fire Fighters, was not a party to this case and had no reason to know that the proffered exhibits conflicted with the judgment of this Court. He accepted the documents to be the constitution and by-laws of the Anthony Fire District, as offered, and agreed that they be marked Joint Exhibits 4 and 5. All of the challenged provisions, including those enjoined in the Consent Judgment, remained word for word.

6. In the autumn of 2004, defendant Mruk informed the Providence Journal that the Fire District's rules had not been amended yet but that the Defendant no longer viewed the older provisions as in effect. Defendant Mruk stated on October 2, 2004, that he intended "to form a committee to review and formally revise the bylaws but hasn't had time to do so thus far." [Providence Journal, October 3, 2004, no quotation marks in original]. "I haven't had a chance to set this up," he said. "This can't be done overnight." [quotation marks in original].

7. More than another year has passed since Chief Mruk stated that compliance with the Consent Judgment could not be accomplished overnight. It is now twenty-one months since the Consent Judgment was entered by this Court.

8. On December 11, 2005, in the context of ongoing collective bargaining negotiations, Defendant Mruk's labor counsel [not counsel who signed the consent judgment in this case] told plaintiff Carlow (union president) that if he wanted to achieve a collective bargaining agreement with Chief Mruk, he (Carlow) would have to agree to "dismiss" all pending claims against the Fire District or Chief Mruk. This "dismissal" would have to include all claims by

Carlow, or the Union, or other officers and members of the Union. [Note: there have been a number of claims in recent years that would come under this description, including claims based on the First Amendment and claims based on state and federal labor law provisions, including Carlow and Perry v. Mruk, CA 04-325S, another case pending in this Court.]

9. "Dismissal" of the present case was specifically mentioned to plaintiff Carlow on December 11, 2005. On December 12, Carlow was e-mailed the attached proposed "memorandum of agreement." Carlow was informed that he would have to agree to this release and obtain the approval of others in the union, including co-plaintiff St. Jean in the present case.

10. In short, defendant (an employer acting under color of state law) has demanded that, as a condition for collective bargaining, plaintiffs must surrender not only pending "claims" in this Court but the right to seek enforcement of a *judgment* of this Court. Such actions go beyond contempt of court in relation to a particular order or judgment. Defendant Mruk, in his role as a public employer, is seeking to undermine the authority and jurisdiction of the Court in a general sense.

11. Plaintiffs, despite their desire for a collective bargaining agreement, have not agreed to participate in such corruption of the Court process. Plaintiffs, however, do find themselves in need of relief from the Court.

**WHEREFORE**, Plaintiffs request that this Court:

1. Schedule a hearing, with notice to defendants, to determine whether defendant Mruk or the Fire District is in civil contempt of this Court's Consent Judgment and/or Final Judgment;
2. Schedule a hearing, with notice to defendants, to determine whether defendant Mruk has committed indirect criminal contempt of this Court's Consent Judgment and/or Final Judgment;
3. Order immediate notice to issue from defendants to all Fire District employees, and to the public, that the constitution and by-law provisions set forth in the March 17, 2004, Consent Judgment are repealed, deleted, and rescinded and of no further force and effect; and order defendants to immediately issue a revised copy of the constitution and by-laws, consistent with the Consent Judgment, to all employees (without any "committee" to review said constitution and bylaws);
4. Find defendant Mruk and/or the Fire District in continuing civil contempt of this Court's prior judgments, including defendant Mruk in his individual capacity;
5. Find defendant Mruk to have committed indirect criminal contempt of this Court's authority, in his individual capacity, punishable by the Court, separate and apart from any remedial relief on behalf of the litigants;
6. Award damages, costs, and reasonable attorney's fees to plaintiffs for their loss of the protections of this Court's Judgments for twenty-one months and their costs in continuing these enforcement efforts. Plaintiffs request that said award be against defendant Mruk in his individual capacity for the reasons that (1) his

actions are indeed his own and not the carrying out of Fire District "policy" and (2) his continuing practice of passing along to the taxpayers of the Fire District all of the costs and legal fees associated with his frequent attacks on civil liberties has allowed him to continue defying the law, and the courts, at no cost to himself. Plaintiffs for that reason are not seeking monetary sanctions against the Fire District itself.

7. Enter appropriate sanctions to punish the indirect criminal contempt of this Court, including fines, costs, and such other sanctions as this Court deems appropriate and necessary to uphold the authority and dignity of the United States District Court in the face of a public official who, for twenty-one months, "hasn't had time" to comply with this Court's Judgment.

8. Order defendant Mruk and the Fire District to refrain from linking collective bargaining negotiations with the subject of ongoing, completed, or future claims by the union or union members in this or any other court or agency; and order defendant Mruk to issue written notice forthwith to all union members, stating that no waiver, dismissal, or release of such claims is a condition of any collective bargaining rights;

9. Enter such other order, or relief, as the Court deems necessary.

Respectfully submitted,
Plaintiffs,
By their Attorney:

John W. Dineen, Esq. #2346
American Civil Liberties Union,
R.I. Affiliate
121 South Main Street
Providence, RI 02903
Tel.(401)331-3550
Fax (401)331-9267

***CERTIFICATION***

I hereby certify that on the 21st day of December, 2005, I mailed and faxed a true copy of this Motion to: Michael W. Carroll, Esq., 72 Pine Street, Providence, RI 02903.

John W. Dineen

**MEMORANDUM OF AGREEMENT**

**BETWEEN COVENTRY FIRE DISTRICT AND LOCAL 3240, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO**

The parties understand and agree that the Union and its individual officers and members shall take whatever steps they lawfully may take in order to cause the dismissal with prejudice of any and all pending litigation against the Coventry Fire District, its officers and/or employees. This includes any claims, lawsuits, charges, complaints or actions of any kind whatsoever.

COVENTRY FIRE DISTRICT

By: ______________________

Date: ______________________

IAFF, LOCAL 3240

By:

Date:

O:\Data\8926\Agr\CBA\05884.doc

FAX 331-9267

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ROBERT CARLOW**<br>**LONNIE ST. JEAN**<br>**Plaintiffs** | } | |
| **v.** | } | **C.A. NO. 02-538ML** |
| **STANLEY J. MRUK**<br>**Individually and in his official capacity as Chief of the Anthony Fire District; and, THE ANTHONY FIRE DISTRICT**<br>**Defendants** | } | |

**PLAINTIFFS' MEMORANDUM**
**IN SUPPORT OF MOTION**
**TO ADJUDGE DEFENDANT**
**IN CONTEMPT**

**The Court's Inherent**
**Contempt Powers**

The District Court has "implied powers... which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." Chambers v. NASCO, 501 U.S. 32, 43, 111 S.Ct. 2123 (1990); U.S. v. Hudson, 7 Cranch. 32, 34 (1812). One of these powers is the power to punish for contempt. Id, at 44. The inherent powers exist even if they may overlap with powers conferred by statute or by the Court's rules of procedure. Chambers, at 43.

Disobedience of the Court's orders, not just disruption of proceedings, is a valid and necessary concern when contempt powers are utilized. Id, at 44. Both

punishment and deterrence are considerations in criminal contempt. U.S. v. Saccoccia, 342 F. Supp.2d 25, 30 (D.R.I. 2004).

Civil contempt proceedings, on the other hand, are primarily concerned with compelling compliance and compensating the opposing party. Saccoccia, at 30. The state of mind in a civil contempt analysis also differs from that in criminal contempt. In criminal contempt, it must be shown that the act was done "deliberately and with knowledge that it violated a court order rather than inadvertently or negligently." Saccoccia, at 30. However, the willfulness and knowledge relate to knowing that one is not following the order, not an intent or awareness that one's conduct is criminal. Id. See also U.S. v. Marquado, 149 F.3d 36, 43, n.4 (1st Cir. 1998).

In civil contempt, the party's intentions or state of mind are irrelevant. Saccoccia, at 30. Civil contempt may occur even though the failure was done with good intentions. Id, at 31. Civil contempt must be demonstrated by clearand convincing evidence. Project Basic v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991).

The First Circuit has recognized that the different purposes of civil and criminal contempt are not necessarily mutually exclusive. Goya Foods v. Wallack Management, 344 F.3d 16, 20-21 (1st Cir. 2003). The punitive purpose may also be present in a civil contempt proceeding and the "monetary sanction need not be perfectly commensurate, dollar for dollar, with the aggrieved party's actual loss." Id, at 21.

**Defendant Mruk Had Ample**
**Notice of What Was Required**

Notice of the order is an element that must be found before a party is held in contempt. However, proof of "actual" notice is not required, and "a party to litigation has a duty to monitor the progress of litigation and to ascertain the terms of any orders entered." Saccoccia, at 31. In the present case, the order under consideration was a consent judgment, signed by counsel for the defendants. In addition, two letters were sent, reminding defendants that the old by-laws still seemed to be extant. Subsequently the very specific Report and Recommendation of Magistrate Judge Martin reminded defendants of what the Consent Judgment required. As a result, there is no question about defendant being on notice of the order.

**There is No Doubt that Defendant Mruk Has Flagrantly Violated this Court's Judgment**

The Court must be satisfied that the order was clear and the failure to comply is not a good faith misunderstanding of the requirements of that order.

It is true that there is no explicit requirement in the Consent Judgment that defendants promulgate new by-laws or new amendments to the District's constitution. However, they were specifically "enjoined from further reliance on or enforcement of Article VI, and Article IV, Sec. 1. Furthermore, certain wording in the old version of Article IV, Sec. 1, "shall be deleted." Consent Judgment, paragraph 1.

The first requirement, involving no "further reliance," is operative immediately since no steps are necessary after the Court approved the Consent Judgment on March 17, 2004. The fact that a "final judgment" was not to be entered until resolution of the attorney's fees issue in no way altered the fact that the

Consent Judgment entered, by the agreement of the parties. Rule 54(b) of the Federal Rules of Civil Procedure specifically authorizes judgments and orders which are not dispositive of all issues in a case, or the claims of all the parties. Nothing in Rule 54(b) states or implies that an interim order or partial judgment, absent a stay, can be ignored by a party. And, as already pointed out, this Court entered a final judgment incorporating the Consent Judgment then over thirteen months old. The definitive act of reliance by defendants on the old by-laws occurred in July 2005. Obviously they were not awaiting final judgment in order to cease reliance on the provisions enjoined by this Court.

Two additional factors support the conclusion that defendants knowingly contravened the Consent Judgment. In October of 2004, Mruk told the Providence Journal that he had not yet had time to set up a "committee" to review and revise the by-laws. "This can't be done overnight," he claimed. He asserted, however, that the old by-laws no longer existed anyway, having been superseded by the "Standard Operating Procedures" in June, 2002. This argument has been defendants' consistent, and unsuccessful, defense throughout this case.

Contrary to Mruk's October 2004 claims, he later introduced the enjoined By-Laws, in their entirety, at the arbitration hearing in the summer of 2005.

The second factor undermining Mruk's position is that he continued to press the unsuccessful argument that the old By-Laws had been superseded, even after the March 2004 Consent Judgment. It was his principal argument against the attorney's fees motion in the proceeding before Magistrate Judge Martin, and it was rejected.

See Report and Recommendation, David L. Martin, United States Magistrate Judge, C.A. 02-538 ML, March 31, 2005, at 12:

> Defendants overlook the fact that Chief Mruk clearly relied on the supposedly "outdated regulations", id, at 4, in his November 15, 2002, letters to Plaintiffs. The letters are replete with references to the "Rules" or "Rules and Regulations."
> ...Plaintiffs had good reason to expect Chief Mruk to continue to cite to the Bylaws, especially since he had threatened to fire them for "any further misconduct..."

Approximately four months after the Report and Recommendation (adopted in its entirety by the Court on April 22, 2005), Mruk again relied on the supposedly outdated By-Laws, during important labor arbitration proceedings.

Magistrate Judge Martin had reasoned that no Rule 68 offer by defendants could be used to cut off entitlement to attorney's fees because the offer was never as favorable to plaintiffs as the Consent Judgment. Report and Recommendation, at 16. The Consent Judgment, among other things, "orders that the term 'respectfully' be removed" and that the challenged portions of the By-Laws be enjoined. Id, at 16. (emphasis added). Thus, Magistrate Martin's conclusions also served as an additional reminder, albeit unnecessary, as to what the Consent Judgment required.

**Defendant's Intent and Bad Faith are Demonstrated by the Attempt at a Coerced Dismissal**

Prior to December 2005 the evidence of defendant Mruk's contempt for this Court was already apparent. His disregard for the role of the Court achieved stunning dimensions, however, with the dismissal "agreement" he sought to obtain as a trade-off for a collective bargaining agreement. Rather than risk noncompliance, he wanted to oust this Court from any further jurisdiction over him

in the present case as well as another pending matter before Judge Smith. The demanded release is all-encompassing. Mruk would amend federal labor law so that an employer could demand that if union officials wish to achieve a collective bargaining agreement, they obtain the dismissal of court challenges unrelated to the collective bargaining process, even including the "dismissal" of a judgment already obtained.

Mruk's desire for a "dismissal" in this case reveals an awareness that the case still presents an obstacle. If he thought he had fully complied, why the need to negotiate his escape from the Court's authority? The chosen method, conditioning collective bargaining rights on such a waiver, is contempt to an extreme degree.

This Court is not taken seriously by Chief Mruk. He doesn't have the "time." He has laid down a challenge to the parties and to the Court itself. It is vitally important that his challenge be met with a response that sends a clear message to Chief Mruk and to anyone else who may view constitutional rights and the federal courts as inconvenient annoyances.

Respectfully submitted,
Plaintiffs,
By their Attorney:

John W. Dineen, Esq. #2346
American Civil Liberties Union,
R.I. Affiliate
121 South Main Street
Providence, RI 02903
Tel.(401)331-3550
Fax (401)331-9267

***CERTIFICATION***

I hereby certify that on the 21st day of December, 2005, I mailed and faxed a true copy of this Motion to: Michael W. Carroll, Esq., 72 Pine Street, Providence, RI 02903.

John W. Dineen